UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DANIEL BATES,

          Petitioner,          Case No. 1:16-cv-985

v.                                          Honorable Paul L. Maloney

TOM MACKIE,

          Respondent.
_____/

## REPORT AND RECOMMENDATION

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Daniel Bates is presently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan. On January 9, 2014, Petitioner entered a plea of guilty to: (1) a charge that he committed first-degree criminal sexual conduct (CSC-I), MICH. COMP. LAWS § 750.520b(1)(b), with his niece; and (2) a charge that he committed second-degree criminal sexual conduct (CSC-II), MICH. COMP. LAWS § 750.520c(1)(a), with his stepdaughter. On February 5, 2014, Judge Joyce Draganchuk of the Ingham County Circuit Court, sentenced Petitioner to concurrent terms of imprisonment of 9 to 40 years on the CSC-I conviction and 5 to 15 years on the CSC-II conviction.

       Petitioner, with the assistance of his appointed appellate counsel, filed a motion in the trial court for specific enforcement of a plea agreement containing terms other than those set forth on the record at the plea hearing. Petitioner argued that the parties had reached agreement on other terms, specifically entry of a plea of guilty to one count of CSC-I with no sentencing cap, at the preliminary examination. On August 13, 2014, Judge Draganchuk, reviewed the preliminary

examination record of the discussion regarding terms of a guilty plea agreement. Judge Draganchuk concluded that there were offers and counter-offers; however, there was never an offer followed by acceptance. (Motion Hr'g Tr., ECF No. 12-5, PageID.179-180.) Accordingly, she determined that there had been no plea agreement other than the agreement reflected on the record at the plea hearing. (*Id.*)

Petitioner sought leave to appeal the trial court's determination in the Michigan Court of Appeals. That court denied leave for lack of merit in the grounds presented by order entered December 8, 2014. (Mich. Ct. App. Ord., ECF No. 12-6, PageID.182.) Petitioner then sought leave to appeal in the Michigan Supreme Court. The supreme court denied leave by order entered July 28, 2015. (Mich. Ord., ECF No. 12-7, PageID.224.) Plaintiff then filed his habeas corpus petition raising the same issue he raised in the state appellate courts, albeit with slightly different wording: did the trial court violate Petitioner's due process for failing to judicially enforce an order of specific enforcement? (Pet., ECF No. 1, PageID.7)

On April 24, 2017, Respondent filed an answer to the petition, (ECF No. 11.), along with the state-court record, pursuant to Rule 5, Rules Governing § 2254 Cases, (ECF No. 12). Respondent contends that Petitioner's habeas claim has no merit. Upon review and applying the standards required by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA), I find that Petitioner's claim is without merit. Accordingly, I recommend that the petition be denied.

**Factual background**

Petitioner was charged with multiple counts of CSC-I and CSC-II relating to his actions with his niece, his niece's friend, and his stepdaughter. At the July 18, 2013 preliminary examination, the prosecutor put on the record the plea negotiations that had occurred to that point:

> [O]n Tuesday I made an offer to the defendant, which was counter-offered and rejected. [Petitioner's counsel] advised me he was going to talk to his client yesterday at the jail about the offer I made. I spoke to [Petitioner's counsel] yesterday afternoon, who advised me that his client wanted a [sentence] cap. I told him I didn't know, I hadn't had a chance to talk about that with the victims, and I would talk about that this morning with them. The victims were not in support of a cap, and the third victim, Ms. Caparo, drove two hours to be here. After telling them what the guidelines would be even without a cap and the fact that defendant tried to fire his attorney today, I'm not comfortable allowing a waiver of the prelim with an attorney the defendant says he doesn't want. I would be more comfortable running the prelim, and I'm not saying that the offer of pleading to one count of C.S.C. first might not be available in circuit court, but what I'm saying is based on the conduct of the defendant today, I would not feel comfortable waiving this prelim on behalf of the People with one witness who's actually here from California.

(Prelim. Exam. Tr., ECF No. 12-2, PageID.88-89.) Petitioner's counsel then indicated that Petitioner would be willing to accept the previous offer of entering a plea of guilty to one count of CSC-I with no cap. (*Id.*, PageId.89.) The prosecutor expressed her reluctance to go forward with that offer and risk Petitioner's changing his mind at the circuit court if he succeeded in dumping his counsel and getting new counsel, without preserving the testimony of the witness who had traveled from California. (*Id.*, PageID.90.)

Petitioner's counsel then tried to nail down the terms under which the parties would proceed with the preliminary examination with only the testimony of the California witness:

> Your Honor, we may have an agreement and understanding here, but I want to carefully preserve this and make sure it's clear. The prosecutor–my understanding–is going to put one alleged victim on the stand only, and then not withdraw her offer allowing him to plead to one count, no cap, at circuit court.

(*Id.*, PageID.91.) The prosecutor indicated that she could not "say that about the offer . . . ." (*Id.*) She was willing to limit the preliminary examination to the one witness if Petitioner would waive the hearing on the counts relating to the other two witnesses and, then, she would discuss the offer with her supervisors. (*Id.*, PageID.92.) Petitioner's counsel discussed that prospect with Petitioner. (*Id.*) They decided to proceed with the full preliminary examination with all three witnesses. (*Id.*) Put differently, they were unwilling to accept the prosecutor's terms with respect to waiver of the preliminary examination on the charges relating to two of the three victims. The court proceeded with the preliminary examination and bound the matter over to circuit court.

Petitioner's prosecution continued in the circuit court for months. He did not decide to enter a plea until shortly before the trial scheduled for January 13, 2014. (Cir. Ct. Docket, ECF No. 12-1.) At the plea hearing, Judge Draganchuk had the prosecutor read the two charges to which Petitioner would be entering his plea of guilty. (Plea Hr'g Tr., ECF No. 12-3, PageID.150-152.) Judge Draganchuk confirmed that Petitioner understood the charges and the maximum penalties. (*Id.*, PageID.152.) She confirmed that Petitioner had consulted with counsel. (*Id.*) She determined that Petitioner had no questions. (*Id.*, PageID.152-153.) She reviewed with Petitioner the rights he would be giving up by pleading guilty and confirmed that he understood them. (*Id.*, PageID. 153-154.)

Judge Draganchuk invited the prosecutor to review the terms of the plea agreement. This exchange followed:

> MS. ROUSSEAU: Your Honor, it's my understanding that this afternoon defendant is gonna plea guilty to Count One and to Count Ten. Upon successful plea to those counts, the remaining counts are to be dismissed. There is also a sentencing agreement pursuant to People versus Killibrew that defendant[']s minimum sentence

will be no more or no less than 108 months in the Michigan Department of Corrections.

THE COURT: Is that a full and complete statement, Mr. Turnwald?

MR. TURNWALD: It is, your Honor.

THE COURT: Mr. Bates, is that your understanding of the agreement?

MR. BATES: Yes, your Honor.

THE COURT: And do you agree with it?

MR. BATES: Yes.

THE COURT: Now, the Prosecutor is agreeing that your sentence, the low end of your sentence would be no more than 108 months. Do you understand that?

MR. BATES: (Inaudible)

THE COURT: Is that a yes?

MR. BATES: Yes.

THE COURT: And if I said said, no, I'm not going along with that, in other words, if I thought you needed more time than that, I would tell you before I sentenced you and you have, you would have a chance to take back your plea and start all over if you wanted to. Do you understand that?

MR. BATES: Yes, your Honor.

THE COURT: Has anyone promised you anything else that hasn't been stated right now in Court in order to get you to enter this plea?

MR. BATES: No, your Honor.

THE COURT: Has anyone used any threats to get you to plead guilty?

MR BATES: No, your Honor.

THE COURT: Is it your own choice to do it?

MR. BATES: Yes, your Honor.

> THE COURT: And are you doing it because you believe you are, in fact, guilty of these offenses?
>
> MR. BATES: Yes, your Honor.

(*Id.*, PageID.154-155.)  Petitioner then described the actions that established his guilt with regard to the two counts.  (*Id.*, PageID.155-157.)  Judge Draganchuk accepted the plea as accurate, supported by the testimony, and "understandingly and voluntarily made without undue influence, threats, or promises of leniency."  (*Id.*, PageID.157.)

After sentencing, Petitioner's appellate counsel moved to specifically enforce the plea agreement terms that were discussed at the preliminary examination.  The trial court denied the motion:

> THE COURT: Okay, well it really is contract law 101.  And the People started by making an offer to the defendant.  The Defendant made a counter offer, so making a counter offer is not acceptance of the original offer.  It's making a new offer.  The Prosecutor rejected the counter offer and then Mr. Turnwald stated that the Defendant would accept a plea to one count of First Degree CSC with no sentence cap.  That's just the Defendant's now brand new offer which was not accepted by the People.  And negotiations continued.  A period of time went by.  The Defendant didn't assert any right to have his offer deemed accepted, and it wasn't accepted.  And the People instead made a counter offer to the Defendant's newest offer and he ultimately accepted that which resulted in what he pled guilty to before this Court.  So there's no basis for enforcing any plea agreement.  There was no offer and acceptance of any prior plea agreement until we got to the actual offer and acceptance of the counts that he plead guilty to, and the motion is denied.

(Mot. Hr'g Tr., ECF No. 12-5, PageID.179-180.)

Petitioner now claims that he is constitutionally entitled to specific enforcement of the plea agreement terms that were discussed during the preliminary examination hearing.

**Discussion**

    I.        AEDPA standard

This action is governed by the AEDPA. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## II. Guilty plea agreements are contractual in nature

Petitioner contends that the prosecutor breached the plea agreement when she failed to abide by the terms that were discussed at the preliminary examination. The Sixth Circuit has recognized that a state prosecutor's breach of a plea bargain is a violation of the federal constitution cognizable on habeas review. *Dixon v. Alexander*, 741 F.2d 121, 123 (6th Cir. 1984). The government may not openly breach a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 509 (1984) ("[W]hen the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand[.]"). As the Supreme Court stated in *Mabry*, "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id.* at 509 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)).

Plea agreements must comply with due process. *Ricketts v. Adamson*, 483 U.S. 1, 16 (1987) (plea agreements must be construed in light of the rights and obligations created by the Constitution). But, plea agreements are governed by more than the requirements of due process because they are contractual in nature. *See United States v. Herrera*, 928 F.2d 769, 771 (6th Cir. 1991) ("The language in *Santobello*) has established the principle that a plea bargain is contractual in nature. The Supreme Court in *Santobello* used terminology which rests at the core of contract law: 'mutually binding promises freely given in exchange for valid consideration.'") (citations omitted). The content of a plea agreement and what the parties agreed to is a question of fact. *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002). In interpreting and enforcing them, courts use traditional principles of contract law. *See Smith v. Stegall*, 385 F.3d 993, 999 (6th Cir. 2004) (citing *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1991)).

Federal courts interpreting and enforcing federal plea agreements apply traditional "federal" contract law principles. *Herrera*, 928 F.2d at 773.[1] Federal courts interpreting and enforcing state plea agreements would presumably apply state law. *See, e.g., Gibson v. Unruh*, No. 5:10CV0466, 2010 WL 1852857, *1 (N.D. Ohio May 7, 2010).

To prevail on his claim that the prosecutor breached the plea agreement, Petitioner must show that the agreement included the terms that were discussed at the preliminary examination. To the extent the existence of a state court plea agreement, or the determination of its terms, is a matter of state law, the issue was resolved conclusively by Judge Draganchuk when she concluded that the plea bargain discussions at the preliminary examination did not establish an agreement. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

Even if the existence and terms of the plea agreement depend on applying federal law, Petitioner has failed to show a breach. The "traditional principles of contract law" that govern interpretation and enforcement of federal plea agreements require a "'meeting of the minds.'" *United States v. Robison*, 924 F.2d 612, 613-614 (6th Cir. 1991); *see also United States v. Ricks*, 398

---

[1] The *Herrera* court noted that application of "federal" contract law was important to avoid the problem that identical agreements might be subject to different interpretations depending upon which state rule is being applied. *Herrera*, 928 F.2d at 773.

F. App'x 135, 137 (6th Cir. 2010); *United States v. McLeod*, No. 2:06-cr-27, 2008 WL 114789, *2 (W.D. Mich. Jan. 9, 2008).

Judge Draganchuk's findings at the close of the hearing on Petitioner's motion demonstrate that there was no meeting of the minds here. Those factual determinations are presumed to be correct. Petitioner has failed to rebut that presumption with any evidence, much less clear and convincing evidence. To the contrary, Judge Draganchuk's findings are well-supported on the record. Moreover, Petitioner has failed to show that the state court's determination that he is not entitled to specific enforcement of the plea terms discussed at the preliminary examination is contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief.

### III. Petitioner waived enforcement of the preliminary examination plea terms

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a subsequent assertion that the circumstances were different than he represented at the hearing. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90. Furthermore, because defendant's later claim of a secret agreement was negated by the trial record; no evidentiary hearing

was required. *Id.* at 92. The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also section 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. 975 F.2d at 1210.[2] *See also Ramos v. Rogers,* 170 F.3d 560, 565 (6th Cir. 1999) (concluding that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy").

Petitioner's suggestion that he believed his agreement with the prosecutor contemplated that he was pleading guilty to one count of CSC-I with no sentencing cap, is directly contradicted by virtually every statement he made after being sworn in at the plea hearing. Petitioner

---

[2] Thereafter, the court in *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994), ordered an evidentiary hearing to inquire into allegations of an undisclosed plea agreement. The *Peavy* court noted that the government admitted the existence of an oral plea agreement, not reflected at the plea hearing. The court was careful to observe that the trial court had not directly asked the defendant whether there were any promises apart from the plea agreement. "Such inquiries would have prompted disclosure of the promises on which Peavy relies here, or, if Peavy had remained silent, likely would foreclose his post-conviction reliance on [those] promises." 31 F.3d at 1345.

is not free to so blithely disregard his sworn testimony. The trial court's acceptance and enforcement of the plea agreement as the prosecutor, Petitioner's counsel, and Petitioner represented its terms, is neither contrary to, nor an unreasonable application of, clearly established federal law. Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Even though I have concluded that Petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined Petitioner's claim under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claim. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claim would be debatable or wrong. Therefore, I recommend that a certificate of appealability should be denied.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Dated:  June 20, 2017                                      /s/ Ray Kent
                                                                         RAY KENT
                                                                         United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).